**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

In Re: NORMAN E. LINDSEY;
KATHERINE C. LINDSEY,
<u>Debtors.</u>

RONALD CUTLER, Trustee,
<u>Plaintiff-Appellant,</u>

v.                                                          No. 96-2222

NORMAN E. LINDSEY; KATHERINE C.
LINDSEY,
<u>Defendants-Appellees,</u>

and

UNITED STATES TRUSTEE,
<u>Party in Interest.</u>

In Re: NORMAN E. LINDSEY;
KATHERINE C. LINDSEY,
Debtors.

RONALD CUTLER, Trustee,
Plaintiff-Appellee,

v.

NORMAN E. LINDSEY,
Defendant-Appellant,

and

KATHERINE C. LINDSEY,
Defendant,

UNITED STATES TRUSTEE,
Party in Interest.

No. 96-2268

Appeals from the United States District Court
for the Eastern District of Virginia, at Alexandria.
Leonie M. Brinkema, District Judge.
(CA-96-602-A, BK-92-13698-AB)

Argued: October 28, 1997

Decided: November 7, 1997

Before ERVIN, HAMILTON, and LUTTIG, Circuit Judges.

_____

Affirmed in part, vacated in part, and remanded with instructions by
unpublished per curiam opinion.

_____

**COUNSEL**

**ARGUED:** Richard Samuel Stolker, Rockville, Maryland, for Appel-
lant. Roy Baxter Zimmerman, Alexandria, Virginia, for Appellees.

2

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

Bankruptcy creditor Ronald Cutler (Cutler) appeals from an order affirming the bankruptcy court's application of 11 U.S.C. § 502(b)(6) to cap his claim against the bankruptcy estate of Norman and Katherine Lindsey. For reasons that follow, we affirm in part, vacate in part, and remand with instructions to increase the allowed amount of Cutler's claim by $4,882.45.

I.

The facts relevant to this appeal are not in dispute. In August 1985, P/T of Dania, Inc. (P/T) leased a certain piece of commercial property in Florida from Cutler for a term of ten years. Under the lease, P/T was responsible for the insurance premiums and the property taxes. Performance of P/T's obligations under the lease was guaranteed personally by Norman Lindsey (Lindsey).

As of February 1988, both P/T and Lindsey were in default under the lease. The lease terminated according to its terms on March 1, 1988. In 1989, Cutler brought a civil action against Lindsey in the United States District Court for the Southern District of Florida to collect the unpaid rent (pre- and post-termination) and various related charges, including unpaid real estate taxes and insurance premiums.[1] On September 11, 1990, Cutler obtained a judgment against Lindsey in the total amount of $356,954.68. Cutler then recorded his judgment in various locations where Lindsey owned property, thereby obtaining liens against those properties.

On July 30, 1992, Lindsey and his wife filed for bankruptcy under Chapter 11 of the Bankruptcy Code in the United States Bankruptcy

_____

[1] Apparently, P/T was insolvent at the time Cutler filed suit.

Court for the Eastern District of Virginia. Thereafter, Cutler filed a proof of claim against the bankruptcy estate in the amount of the judgment plus post-judgment interest, for a total of $431,771.68. Lindsey and his wife (the Debtors) objected to Cutler's claim on the ground that it exceeded the amount allowable under 11 U.S.C. § 502(b)(6), which caps a lessor's claim for damages resulting from the termination of a lease of real property. Cutler objected to the proposed reduction of his claim. In support of his objection, he argued that: (1) Bankruptcy Code § 502(b)(6) does not apply when the debtor is a guarantor not a lessee; (2) Bankruptcy Code§ 502(b)(6) cannot operate to cap a secured claim; and (3) principles of res judicata prevented the bankruptcy court from reducing his claim.

The bankruptcy court conducted a hearing on the matter and thereafter ruled in favor of the Debtors. Accordingly, the bankruptcy court entered an order on December 13, 1995 that allowed Cutler's claim in the amount of $76,039.65, plus post-judgment interest at 10% per annum from September 11, 1990. The $76,039.65 constituted 15% of the post-termination rent due under the lease as determined by the district court in the Florida litigation, $7,500 in attorney's fees and $5,529.45 for pre-termination rent. The Debtors thereafter filed a motion to reconsider the bankruptcy court's order insofar as it allowed post-judgment interest and attorney's fees in addition to the amount allowed under Bankruptcy Code § 502(b)(6). After a hearing on the Debtors' motion, the bankruptcy court disallowed the post-judgment interest, but continued to allow the $7,500 in attorney's fees.

Both parties appealed to the District Court for the Eastern District of Virginia. In addition to the arguments he raised in the bankruptcy court, Cutler argued that the bankruptcy court erroneously disallowed him post-judgment interest, court costs, and amounts for property taxes and insurance owed to him under the lease. The Debtors continued to object to Cutler's recovery of attorney's fees. After conducting a hearing, the district court entered a written order and memorandum opinion affirming the bankruptcy court's rulings in toto. See In re Lindsey, 199 B.R. 580 (E.D. Va. 1996). Cutler noted a timely appeal of the district court's order.**2**

_____

**2** The Debtors noted a cross-appeal of the district court's affirmance of the portion of the bankruptcy court's order allowing Cutler $7,500 in attorney's fees. However, the Debtors abandoned this cross-appeal at oral argument.

4

II.

We apply the same standard of review as the district court applied to the bankruptcy court's decision. Findings of fact are reviewed for clear error, and conclusions of law are reviewed de novo. In re Johnson, 960 F.2d 396, 399 (4th Cir. 1992).

III.

In relevant part, Bankruptcy Code § 502(b) provides:

> (b) [I]f . . . objection to a claim is made, the court, after notice and a hearing, shall determine the amount of such claim in lawful currency of the United States as of the date of the filing of the petition, and shall allow such claim in such amount except to the extent that--
>
> * * *
>
> (6) If such claim is the claim of a lessor for damages resulting from the termination of a lease of real property, such claim exceeds--
>
>   (A) The rent reserved by such lease, without acceleration for the greater of one year, or 15 percent, not to exceed three years, of the remaining term of such lease, following the earlier of--
>
>     (i) The date of the filing of the petition; and
>
>     (ii) The date on which such lessor repossessed, or the lessee surrendered, the leased property; plus
>
>   (B) Any unpaid rent due under such lease, without acceleration, on the earlier of such dates . . . .

5

11 U.S.C. § 502(b). Bankruptcy Code § 502(b)(6) is "designed to compensate the landlord for his loss while not permitting a claim so large (based on a long-term lease) as to prevent other general unsecured creditors from recovering a dividend from the estate." S. Rep. 95-989, at 63 (1978), reprinted in 1978 U.S.C.C.A.N. 5787, 5849. Courts unanimously recognize that, in practice, Bankruptcy Code § 502(b)(6) acts as an equalizer between the claims of lessors, who can mitigate their damages by reletting, and those of other creditors by allowing lessors to be compensated for loss due to the breach of the lease without receiving a windfall. See, e.g., In re Thompson, 116 B.R. 610, 613 (Bankr. S.D. Ohio 1990).

Before this court, Cutler presents the same three arguments in support of his ultimate contention that Bankruptcy Code§ 502(b)(6) does not apply to cap his claim against the bankruptcy estate. We address each argument in turn.

A.

Cutler first relies on a distinction between a lessee and a guarantor. According to Cutler, Bankruptcy Code § 502(b)(6) does not apply to cap the claim of a lessor against a guarantor; rather, it only applies to cap the claim of a lessor against a lessee.

Cutler's argument is without merit. Critically, the statutory language of Bankruptcy Code § 502(b) does not make such a distinction. Rather, it broadly casts its net to apply to any claim that is "the claim of a lessor for damages resulting from the termination of a lease of real property . . . ." 11 U.S.C. § 506(b)(6). The term lessee is not even mentioned. Under the well settled canons of statutory construction, unless literal application of this statutory provision would produce a result demonstrably at odds with the intentions of Congress, we are bound to apply its terms as written. See United States v. Ron Pair Enterprises, Inc., 489 U.S. 235, 242 (1989).

Applying Bankruptcy Code § 502(b)(6) in this case does not produce a result demonstrably at odds with the intent of Congress. As noted above, Congress intended Bankruptcy Code § 502(b)(6) to fairly compensate lessors for their losses while at the same time permitting other creditors to recover a dividend from the bankruptcy

6

estate. Necessarily, it would defeat the intent of Congress if we allowed a lessor to recover all rent due under a long term lease at the expense of other creditors simply because the debtor was a guarantor. For obvious reasons, Congress did not intend to allow a lessor to circumvent the effect of Bankruptcy Code § 502(b)(6) on this basis. Thus, application of Bankruptcy Code § 502(b)(6) in this case furthers, rather than hinders, Congress' intent. Finally, we note that our rejection of a distinction between a lessee and a guarantor in the context of applying Bankruptcy Code § 502(b)(6) is in accord with the decisions of the overwhelming majority of courts that have addressed the issue. See, e.g., In re Episode USA, Inc., 202 B.R. 691, 693-96 (Bankr. S.D.N.Y. 1996); Matter of Interco, Inc. , 149 B.R. 934, 940-41 (Bankr. E.D. Mo. 1993); but see In re Danrik , 92 B.R. 964 (Bankr. N.D. Ga. 1988).

B.

Cutler next argues that Bankruptcy Code § 502(b)(6) does not apply to his claim because his claim is secured. We find his argument to be without merit.

Cutler essentially concedes, as he must, that Bankruptcy Code § 502(b)(6) makes no distinction between lessors with secured claims and lessors with unsecured claims. However, Cutler relies on certain legislative history of Bankruptcy Code § 502(b)(6) that suggests that Congress viewed the average landlord as a general unsecured creditor and enacted Bankruptcy Code § 502(b)(6) so as to treat all unsecured general creditors relatively the same. The legislative history relied upon provides that the § 502(b)(6) cap "is designed to compensate the landlord for his loss while not permitting a claim so large (based on a long-term lease) as to prevent other general unsecured creditors from recovering a dividend of the estate." S. Rep. 95-989, at 63 (1978), reprinted in 1978 U.S.C.C.A.N. 5787, 5849 (emphasis added). Because the plain language of Bankruptcy Code § 502(b)(6) unambiguously applies to the secured claim of a lessor for damages resulting from termination of a lease, we do not engage in interpretation of it. See United States v. Southern Management Corp., 955 F.2d 914, 920 (4th Cir. 1992). Accordingly, the question for us is whether the literal application of Bankruptcy Code § 502(b)(6) to the secured claim of a lessor for damages resulting from termination of a lease is

7

demonstrably at odds with the intent of Congress. See Ron Pair Enterprises, Inc., 489 U.S. at 242. We answer this question in the negative.

Admittedly, the legislative history that Cutler relies upon seems to make the very distinction that he wants us to recognize. However, Cutler's proposed distinction is at odds with the mechanics of the Bankruptcy Code. Under Bankruptcy Code § 502, the bankruptcy court first determines the amount of a creditor's claim and then determines how much of that claim will be "allowed" as a liability against the bankruptcy estate. 11 U.S.C. § 502; see 4 Collier on Bankruptcy, ¶ 502.01 (15th ed. 1997). In determining the allowed amount of a creditor's claim, the bankruptcy court considers the applicability of statutory provisions that may limit a creditor's claim, such as the cap on a lessor's claim for damages resulting from termination of a lease found in Bankruptcy Code § 502(b)(6). See 11 U.S.C. § 502. "Allowed" claims are then classified for purposes of determining their priority in recovering from the bankruptcy estate. Bankruptcy Code § 506 is the basic provision governing the determination of the secured status of allowed claims. In relevant part, Bankruptcy Code § 506(a) provides that:

> [a]n allowed claim of a creditor, secured by a lien on property in which the estate has an interest . . . is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property . . . and is an unsecured claim to the extent that the value of such creditor's interest . . . is less than the amount of such allowed claim.

11 U.S.C. § 506(a) (emphasis added). This framework makes clear that the secured/unsecured nature of a lessor's claim is irrelevant in determining the allowed amount of a lessor's claim for damages resulting from termination of a lease. Likewise, this framework makes clear that the secured/unsecured nature of a lessor's claim is not relevant until the bankruptcy court is ready to classify that claim pursuant to Bankruptcy Code § 506. Therefore, the fact that Cutler recorded his judgment, thereby perfecting liens against the Debtors' real property, simply means that his allowed claim is secured and that the amount of his allowed claim is entitled to be paid to the extent of such security.

8

C.

Cutler next argues that principles of res judicata prevent the bankruptcy court from capping his claim under Bankruptcy Code § 502(b)(6). For reasons that follow, we reject this argument as well.

The law is settled that the doctrine of res judicata applies in the bankruptcy context to preclude subsequent litigation on matters actually and necessarily resolved in a prior adjudication between the same parties. See In re Varat Enterprises, Inc., 81 F.3d 1310, 1315 (4th Cir. 1996). At first blush, Cutler's argument that the doctrine of res judicata prevents application of Bankruptcy Code§ 502(b)(6) in this case appears to have merit. Any reduction in the amount of Cutler's judgment appears to violate the doctrine of res judicata. But, as intelligently explained by the district court for the Northern District of New York in Kohn v. Leavitt-Berner Tanning Corp. , 157 B.R. 523, 526-27 (N.D.N.Y. 1993), a close examination of the language of Bankruptcy Code § 502 permits a reading which both honors the doctrine of res judicata and at the same time allows the bankruptcy court to fulfill the equitable purpose of the Bankruptcy Code. See Pepper v. Litton, 308 U.S. 295, 304-05 (1939) (providing that in passing on allowance of claims, bankruptcy courts sit as courts of equity).

In pertinent part, Bankruptcy Code § 502(b) provides that upon objection to the claim of a creditor, "the court, after notice and hearing, shall determine the amount of such claim in lawful currency of the United States as of the date of the filing of the petition, and shall allow such claim in such amount except to the extent that" one of its enumerated limiting provisions applies. As correctly noted by the court in Kohn, this language requires the bankruptcy court to undertake a two-step analysis in applying a limiting provision such as the cap on a lessor's claim for damages resulting from termination of a lease found in Bankruptcy Code § 502(b)(6). See Kohn, 157 B.R. at 527. First, the court must determine the amount of a creditor's claim as of the date of the filing of the petition. See id. In a case such as the one before us, this means accepting as non-reviewable the amount of Cutler's claim as determined by the United States District Court for the Southern District of Florida. See id."This figure then forms the basis for the second part of the analysis, wherein the court determines how much of the claim should be allowed." Id. Applying the princi-

9

ples of equity inherent in the Bankruptcy Code, the bankruptcy court then looks behind the judgment to ascertain the nature of the claim underlying the judgment. See id. When the judgment stems from a lessor's claim for damages resulting from termination of a lease of real property, then Bankruptcy Code § 502(b)(6) applies to cap the allowed amount of the creditor's claim. See id. Through this two-step process, the bankruptcy court pays deference to the doctrine of res judicata and, at the same time, to Congress' notions of equity as expressed by the Bankruptcy Code. See id.

In sum, we reject all three of Cutler's arguments on the applicability of Bankruptcy Code § 502(b)(6) in this case and hold that the district court did not err in affirming the bankruptcy court's application of Bankruptcy Code § 502(b)(6) to cap the portion of Cutler's claim that flowed from termination of the lease.

IV.

Cutler alternatively contends that even if Bankruptcy Code § 502(b)(6) applies to cap his claim with respect to post-termination rent, his claim should still be allowed in amounts equal to his post-judgment interest, unpaid real estate taxes for the years 1987, 1988, and 1989, unpaid insurance premiums for the years 1988 and 1989, and court costs related to obtaining the judgment in Florida. We agree with Cutler to the extent that some of these items of damages did not flow from the termination of the lease.

By its plain language, Bankruptcy Code § 502(b)(6) only limits those damages which would have been avoided but for termination of a lease. Thus, we must determine whether each item of damage relates to the termination of the lease at issue.

It is axiomatic that Lindsey would have avoided damages for post-judgment interest and court costs from his district court action had the lease not been terminated. Indeed, Cutler points to no evidence that would indicate a contrary conclusion. Thus, the district court did not err in affirming the bankruptcy court's refusal to allow Cutler post-judgment interest and court costs.

10

With respect to Cutler's claim for unpaid real estate taxes and unpaid insurance premiums, the amounts that accrued prior to termination of the lease on March 1, 1988 are not subject to the cap, but the amounts for future taxes and premiums that would become due under the lease (i.e., prospective damages) are subject to the cap. The record shows that the unpaid property taxes for 1987 and the first two months of 1988 amount to $4774.28, and the unpaid insurance premiums for the first two months of 1988 amount to $108.17. The district court erred in affirming the bankruptcy court's refusal to include these amounts as part of the allowed amount of Cutler's claim. The district court did not err in affirming the bankruptcy court's refusal to include any amounts for unpaid real estate taxes or unpaid insurance premiums that accrued after the termination of the lease on March 1, 1988.

V.

In conclusion, we hold that the district court did not err in affirming the bankruptcy court's decision that Bankruptcy Code § 502(b)(6) applies to cap Cutler's claim as it relates to damages flowing from termination of the lease. We also hold that the district court did not err in affirming the bankruptcy court's refusal to include post-judgment interest, court costs, and unpaid real estate taxes and insurance premiums that accrued after the lease terminated on March 1, 1988. Accordingly, we affirm the district court's order in these respects. Finally, we hold the district court erred in affirming the bankruptcy court's refusal to allow $4774.28 for unpaid property taxes for 1987 and the first two months of 1988 and $108.17 for unpaid insurance premiums for the first two months of 1988 as part of the allowed amount of Cutler's claim. We, accordingly, vacate the district court's order in this respect and remand with instructions to the district court to enter an order consistent with this opinion.

AFFIRMED IN PART, VACATED IN PART,
AND REMANDED WITH INSTRUCTIONS

11